



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| JAMES SOLOMON, DARA SOLOMON, TERRY MILLER, HILARY MILLER, and JESSICA MILLER, by her mother, and next friend, HILARY MILLER | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:03-CV-2797-ODE |
| v. | ) ) ) | |
| WAFFLE HOUSE, INC., | ) ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION TO COMPEL RESPONSES TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37.1,

Plaintiffs James Solomon, Dara Solomon, Terry Miller, Hilary Miller and Jessica

Miller ("Plaintiffs"), by counsel, move for an order compelling Defendant Waffle

House, Inc. ("Waffle House") to respond to discovery requests seeking information

and documents regarding customer complaints, document retention policies,

employee performance and disciplinary records, customer service and non-

discrimination training, management policies, factual bases for Defendant's

affirmative defenses, copies of annual reports, and attachments to Defendant's

applicable insurance policy.



Plaintiffs assert that the requested discovery is relevant and is reasonably calculated to lead to the discovery of admissible evidence, and that Defendant's objections are baseless.  In support of their motion, Plaintiffs rely upon their Memorandum in Support of Plaintiffs' Motion to Compel Response to Interrogatories and Production of Documents filed herewith and incorporated herein by reference.

Respectfully submitted,

Dated: May 17, 2004

David C. Ates, GA Bar No. 026281
Alysa B. Freeman, GA Bar No. 275394
MILLER BILLIPS & ATES, P.C.
730 Peachtree St., Suite 750
Atlanta, Georgia 30308
Phone: 404/969-4101
Facsimile: 404/969-4141

Thomas J. Barton
Mary E. Kohart
Meghan Cherner-Ranft
(admitted pro hac vice)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: 215/988-2700
Facsimile: 215/988-2757

- 2 -

Of Counsel:

Gerald S. Hartman
Christine D. Bell
Wendelyn L. Pizer
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, DC 20005-1209
Phone:  202/842-8800
Facsimile:  202/842-8465

Susan E. Huhta
Carolyn P. Weiss
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle NW, Suite 400
Washington DC 20036
Phone: 202/319-1000
Facsimile: 202/319-1010

Henderson Hill
FERGUSON, STEIN, CHAMBERS,
ADKINS, GRESHAM & SUMTER, P.A.
741 Kenilworth Avenue, Suite 300
Charlotte, North Carolina 28204-2828
Phone: 704/375-8461
Facsimile: 704/334-5654


*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JAMES SOLOMON, DARA SOLOMON, TERRY MILLER, HILARY MILLER, and JESSICA MILLER, by her mother, and next friend, HILARY MILLER | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:03-CV-2797-ODE |
| v. | ) ) | |
| WAFFLE HOUSE, INC., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL RESPONSES TO INTERROGATORIES
AND PRODUCTION OF DOCUMENTS**

## I.   BACKGROUND

### A.   Plaintiffs' Claims

Plaintiffs James Solomon, Dara Solomon, Terry Miller, Hilary Miller and

Jessica Miller allege that they were denied service, provided substandard service,

and ultimately threatened with violence, due to the race of the Solomons and the

Millers' association with the Solomons at an Alpharetta, Georgia Waffle House in

violation of 42 U.S.C. § 1981 and Title II of the Civil Rights Act of 1964, 42

U.S.C. § 2000a *et seq.* Plaintiffs' complaint alleges that the Solomons, Millers,

and Sabrina and Aaron VanderStappen sought food and services from a Waffle

House restaurant in Alpharetta, Georgia on April 21, 2002.  The Solomons, Millers

and VanderStappens were returning home from a wedding when they stopped at

the Alpharetta Waffle House.  Upon entering the restaurant, which was not

crowded, Plaintiffs and the VanderStappens were not greeted, but seated

themselves at two empty tables, since there was no table large enough to

accommodate a party of seven.  Mr. Miller, and Mr. and Mrs. VanderStappen, all

of whom are white, sat together at one table ("the all-white table"), and Hilary and

Jessica Miller, who are white, and the Solomons, who are African American, sat at

the table directly adjacent to the all-white table ("the mixed-race table").

Jerry Wall was the server on duty assigned to serve both tables.  When Mr.

Wall approached the all-white table, Mr. Miller informed Mr. Wall that the two

tables were together.  Mr. Wall proceeded to distribute menus, take the drink

orders, take the food orders, and even serve the food ordered at the all-white table,

before he even acknowledged the mixed-race table.  After repeated inquiries by the

Plaintiffs, Mr. Wall eventually (albeit reluctantly) took the drink and food orders

from the mixed-race table, by which time the all-white table had completed their

meals.  At the mixed-race table, only Hilary and Jessica Miller ultimately received

their food, which was inexcusably delayed and inedible.  The Solomons, despite

sitting in the same booth and placing an order at the same time as Hilary and Jessica Miller, never received their food at all.  The Solomons were, however, presented with a bill for the food that they were never served.  Moreover, Plaintiffs witnessed Mr. Wall so effectively serve a group of white customers that had entered the Alpharetta Waffle House subsequent to Plaintiffs' arrival, that the customers finished their meals and left the restaurant, before Mr. Wall even took the orders of the mixed-race table.

Plaintiffs repeatedly complained to Waffle House management about the incident.  The assistant manager on duty at the time of the incident, Melvin Nichelson, took no corrective action in response to their complaints.  Twice Mr. Miller approached Mr. Nichelson, who was cooking at the grill, and twice Mr. Nichelson stared blankly at Mr. Miller and did nothing in response to Mr. Miller's complaints about the lack of service the mixed-race table was receiving.  Plaintiffs also called the Unit Manager at the Alpharetta location the following day to lodge a complaint of race discrimination, but he simply passed Plaintiffs off to Waffle House corporate.  Finally,  Plaintiffs lodged a timely complaint with the Waffle House corporate office, but Waffle House's investigation and response were wholly inadequate.

As a result of this incident, the pattern and practice of discrimination evidenced by the many similar cases pending against Waffle House,[1] and information obtained through counsel's investigations, Plaintiffs allege that: 1) Waffle House unlawfully discriminated against them; 2) this discrimination was part of a pattern and practice of discrimination; and 3) Waffle House failed to take proper measures to prevent, investigate or respond to the discrimination. *See* Compl. ¶¶ 32, 33, 43, 44. Plaintiffs seek declaratory relief and injunctive relief as well as compensatory and punitive damages in an amount to be determined at trial. *See*. Compl. at pp. 16-17.

---

[1] In fact, Plaintiffs' race discrimination lawsuit is one of more than a dozen nationwide and one of five in Georgia that have been filed against Waffle House, Inc., since September 2003. *See, e.g., Solomon et al. v. Waffle House, Inc.*, Civil Action No. 1:03-CV-2797-ODE (N.D. Ga); *Slocumb et al. v. Waffle House, Inc.*, Civil Action No. 1:03-CV-1373 RLV (N.D. Ga.); *Brooks et al. v. Collis Foods, Inc. & Waffle House, Inc.*, Civil Action No. 2:03-CV-0155 (WCO) (N.D. Ga.); *Dozier et al. v. Waffle House, Inc.*, Civil Action No. 1:03-CV-3093 (ODE) (N.D. Ga); *Givens et al. v. Waffle House, Inc.*, Civil Action No. 1:03-CV-3367 (TWT) (N.D. Ga); *Eddy et al. v. Waffle House, Inc.*, Civil Action No. 2:03-2183-18-DCN (D.S.C.); *Edwards et al. v. Waffle House, Inc.*, Civil Action No. 4:03-CV-137-H4 (E.D.N.C.); *Goode et al. v. Waffle House, Inc.*, Civil Action No. 5:03-CV-701-BO(3) (E.D.N.C.); *Lloyd et al. v. Waffle House, Inc.*, Civil Action No. 1:03-CV-237 (W.D.N.C.); *Berry et al. v. Hillcrest Foods, Inc. & Waffle House, Inc.*, Civil Action No. 3:03-CV-447 (W.D.N.C.); *Eason et al. v. Ozark Waffles, LLC & Waffle House, Inc.*, Civil Action No. 5:03-CV-207 (E.D. Tex.); *Crowe v. Hillcrest Foods, Inc. & Waffle House, Inc.*, Civil Action No. 0-03-3786-18 (D.S.C.); *Harris et al. v. Hillcrest Foods, Inc. & Waffle House, Inc.*, Civil Action No. 3:04-CV-014 (W.D.N.C.); *Dotson v. Waffle House, Inc.*, Civil Action No. 1:03-CV-3093 (D.S.C.). The Washington Lawyers' Committee, Drinker Biddle & Reath LLP, and Ferguson, Stein, Adkins, Gresham & Sumter, PA, who are co-counsel in the instant case, are also co-counsel in all of the Northern District of Georgia cases.

**B.    Defendant's Affirmative Defenses**

Defendant has denied Plaintiffs' allegations and asserted eighteen affirmative defenses.  Four broad categories of the defenses are particularly relevant here.  First, Defendant states in its Fourth Defense that Defendant did not have "actual or constructive notice" of any unlawful behavior directed towards Plaintiffs.  *See* Def. Answer at p. 3.  *See also* Answer at p. 4, Def.'s Seventh Defense (stating in part that any discriminatory conduct by an employee was "undertaken without the knowledge or consent of Defendant").

Second, Defendant repeatedly asserts that whether or not it was aware of discriminatory conduct, it "exercised reasonable care to prevent and correct promptly the allegedly improper behavior."  *See* Answer at p. 3, Def.'s Fourth Defense; *see also id.* at pp. 4-5, Def.'s Eighth Defense (Defendant acted reasonably to prevent and remedy any discrimination by having a policy against such behavior and a procedure for dealing with such behavior in a "prompt and effective" way); *id.* at p. 6, Def.'s Sixteenth Defense (any such discriminatory conduct was "contrary to Defendant's good faith efforts to comply with federal and/or state law").

Third, Defendant states in multiple ways that to the degree an employee discriminated against Plaintiffs, such conduct was "outside of the course and scope

of that individual's employment" and otherwise not authorized by or in furtherance of Defendant's business.  *See* Answer at p. 4, Def.'s Seventh Defense; *id.* at p. 6, Def.'s Fifteenth Defense (stating that anyone who discriminated was not a managerial agent or acting within the scope of his/her employment).  Fourth, Defendant avers that even if race was a motivating factor in the conduct at issue in the complaint, "the same would have occurred absent consideration of race."  *See id.* at pp. 3-4, Def.'s Fifth Defense.

Waffle House's defenses raising lack of notice and scope of employment arguments render its management structure, chain of command, and the duties and responsibilities of all individuals within that chain of command relevant for determining both liability and damages.  In addition, Defendant's asserted lack of notice and its purportedly "prompt and effective" system for handling discrimination complaints emphasize the importance of evidence related to Waffle House's procedure for identifying, categorizing and investigating customer complaints.  Moreover, Defendant's assertion that it took reasonable care and made good faith efforts to prevent discrimination renders relevant information related to Defendant's efforts to educate employees about customer service and discrimination and to identify any discrimination that occurs.

## C.   **Plaintiffs' Discovery Requests**

The discovery period in this action began on November 13, 2003 and is
scheduled to end on May 17, 2004.  Plaintiffs served their First Set of
Interrogatories and Document Requests on November 14, 2003.  *See* Exs. A and B.
Defendant served its written responses on December 17, 2003, *see* Exs. C and D,
and at that time produced only 18 pages of documents (all but one of which were
documents that Plaintiffs had given to Defendant), supplementing its production at
the end of December with only 32 more documents, while withholding documents
covering entire areas of critical discovery.  Waffle House refused to provide
narrative answers to almost any of the interrogatories, instead relying on its
virtually non-existent document production.[2]

In late January, 2004, Defendant produced general company-wide policies
relating to customer service and discrimination as well as some excerpts from
management training materials.[3]  However, many of these manuals were heavily
redacted, despite being requested in full.  Moreover, Defendant continued to

---

[2] Defendant also frequently referenced its responses to other interrogatories or document
requests, which were either irrelevant or for which Defendant had neither provided a substantive
response nor produced documents.

[3] These materials were produced in *Slocumb et al. v. Waffle House*, Civ. Action No. 1:03-CV-
1373-RLV, but Plaintiffs were informed that these documents were produced in response to
requests in this case as well.

withhold numerous documents specific to the instant case, including but not limited to customer complaints, employee disciplinary and performance records, unit-specific training information, and relevant document retention policies.

On February 12, 2004, Plaintiffs sent Defendant a letter describing in detail the many deficiencies in Defendant's discovery responses. *See* Ex. E. Although Plaintiffs' attempts to obtain a timely substantive response from Defendant were met with delay, *see* Ex. F,[4] on February 27, 2004, the parties held a meet and confer regarding Defendant's discovery deficiencies. Defendant thereafter provided only limited supplementation to a handful of responses.[5] On March 2, 2004, Plaintiff sent Defendant a letter confirming Defendant's position with regard to the remaining areas of dispute. *See* Ex. G.

Defendant simply refuses to provide requested information or to produce requested documents related to several key areas of discovery outlined in Plaintiffs' February 12, 2004 letter. Defendant also continues to excuse its failure

---

[4] Defense counsel did not respond to the last e-mail sent from Plaintiffs' counsel Carolyn Weiss on February 13, 2004. *See* Ex. F. Then, on or about February 19, 2004, during a conference call with defense counsel, Plaintiffs' counsel Susan Huhta requested again that the parties schedule a meet and confer, and suggested Monday, February 23, 2004 or Tuesday February 24, 2004. Ms. Kim responded that Defendant would not be ready to talk about its discovery deficiencies until Friday, February 27, 2004.

to produce documents in a timely manner by stating that it is still reviewing documents and that more responsive documents may be forthcoming.  This is true despite the fact that almost six months have passed since Plaintiffs served their discovery requests and discovery is about to close.  Indeed, Plaintiffs had no choice but to take depositions of Defendant's witnesses without key documents.  In addition, Defendant has only one corporate office and many of the documents are corporate policies and procedures that are seemingly easy to obtain.  Further, many of the requested documents require a relatively narrow search regarding only the Alpharetta unit or a limited number of employees.  Defendant has failed to meet its obligations under the federal and local rules of discovery.  It should be required to do so.

## II.   ARGUMENT

### A. Prior Customer Complaints Against the Alpharetta Waffle House and Defendant's Responses Thereto

*Interrogatory No. 10: Identify and describe in detail each and every alleged incident, report or complaint by customers regarding service at the Alpharetta Waffle House, including incidents, reports, or complaints regarding discrimination or alleged discrimination on the basis of race, within the five years prior to the filing of this action.*

---

(..continued)
[5] Defendant agreed to specifically address only five limited deficiencies.  *See* Ex. G.  Defendant followed up on the five specific points on Friday, March 5, 2004, and then supplemented its document production on March 8, 2004.

*Defendant's Response:  Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 2, 3, 4, 8, 9, 10 and 11 with particularity. Defendant also objects to Interrogatory No. 10 on the ground that it seeks information not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects to this interrogatory as overly broad and unduly burdensome in that it seeks information regarding "each and every" alleged "incident" "complaint" or "report" of race discrimination against a customer that "occurred at the Alpharetta Waffle House," and that it seeks information regarding "each and every" "complaint" by customers "regarding service" generally.  Defendant further objects to this interrogatory as insufficiently limited with respect to temporal scope.  It is unduly burdensome to require Defendant to interview every person who has stepped inside the Alpharetta Waffle House over the course of a five-year period to determine whether that individual has any knowledge regarding "each and every" customer "complaint."  Defendant further objects to the term, "complaint," without further definition as vague and ambiguous.  Defendant further objects to this interrogatory to the extent that it seeks information which constitutes personal or private information regarding third-party witnesses or otherwise seeks confidential information.  Subject to and without waiver of the foregoing general and specific objections, Defendant responds that, pursuant to Federal Rule of Civil Procedure 33(d) and upon entry of an appropriate protective order, it will make available non-privileged formal complaints made or forwarded to Defendant's corporate headquarters or to the Alpharetta unit, #1125, by restaurant customers who have alleged mistreatment based on race at unit #1125 during the relevant time frame.  By way of further response, Defendant refers Plaintiffs to its objections and responses to Plaintiffs' Request No. 13.*

*Interrogatory No. 11:  Identify and describe in detail your response, investigation, or inquiry into, if any, each and every alleged incident,*

- 10 -

complaint, or report identified in your response to Interrogatory No. 10.

> *Defendant's Response:  Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 2, 3, 4, 8, 9, 10 and 11 with particularity. Defendant also objects to Interrogatory No. 11 on the grounds that it seeks information not reasonable calculated to lead to the discovery of admissible evidence, and is overly broad and unduly burdensome.  Defendant further objects to this interrogatory on the grounds that it seeks to disclose documents protected by the attorney-client privilege, self-critical analysis privilege, common interest privilege and/or the work product doctrine.  Defendant further objects to this interrogatory to the extent that it seeks information which constitutes personal or private information regarding third-party witnesses or otherwise seeks confidential information.  Subject to and without waiver of the foregoing general and specific objections, Defendant refers Plaintiffs to its objections and responses to Interrogatory No. 10 and Plaintiffs' Request No. 14.*

*Document Request 13:  Any and all documents relating to complaints by customers regarding service at the Alpharetta Waffle House, including complaints regarding discrimination or alleged discrimination on the basis of race within the five years prior to the filing of this action, including complaints, questionnaires, correspondence, civil complaints, charges, notice or communications received by you with regard to such incidents, and any and all records, logs, memoranda or notes relating to any such incidents.*

> *Defendant's Response:  Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 3, 4, 5, 6, 7, 8, 9 and 10 with particularity. Defendant also objects to Request No. 13 on the grounds that it is overly broad and unduly burdensome in that it seeks "any and all" documents "relating to" "discrimination or alleged discrimination on the basis of race," as well as "any and all" "complaints" "regarding service."  Defendant further objects*

to the term, "complaints," without further definition as vague
and ambiguous.  Defendant further objects to this request on
the grounds that it is insufficiently limited with respect to
temporal scope.  Defendant further objects to this request to the
extent it seeks information, which is neither relevant to this
action nor reasonably calculated to lead to the discovery of
admissible evidence.  Defendant further objects to this request
to the extent it seeks information protected from disclosure by
the attorney-client privilege, self-critical analysis privilege,
common interest privilege and/or the work product doctrine.
Subject to and without waiver of the foregoing general and
specific objections, Defendant responds that it will make
available nonprivileged formal complaints made or forwarded
to Defendant's Norcross, Georgia corporate headquarters or
its Alpharetta, Georgia unit, #1125, by African-American
customers who alleged racial mistreatment at the Alpharetta
unit, #1125, during the relevant time frame.

*Document Request 14*:  Any and all documents relating to your
response, investigation or inquiry, if any, into incidents or alleged
incidents of discrimination on the basis of race against customers at
the Alpharetta Waffle House, as well as complaints by customers
regarding service at the Alpharetta Waffle House, within the five
years prior to filing of this action.

   *Defendant's Response*:  Defendant incorporates its General
   Objections as if fully set forth herein and restates General
   Objections Nos. 1, 3, 4, 5, 6, 7, 8, 9 and 10 with particularity.
   Defendant further objects to Request No. 14 on the grounds that
   it is insufficiently limited with respect to temporal scope.
   Subject to and without waiver of the foregoing general and
   specific objections, Defendant refers Plaintiffs to its objections
   and responses to Request No. 13.  By way of further response,
   Defendant will make available non-privileged portions of
   investigation files concerning formal complaints made or
   forwarded to Defendant's Norcross, Georgia corporate
   headquarters or its Alpharetta, Georgia unit, # 1125, by

> *African-American customers who alleged racial mistreatment*
> *at the Alpharetta unit, #1125, during the relevant time frame.*

*See* Ex. C at pp. 19-22; Ex. D at pp. 16-18.

Defendant has failed to properly respond to Interrogatory Nos. 11 and 12, which seek a detailed description of customer complaints at the Alpharetta Waffle House and Waffle House's inquiry, investigation, and response thereto. Document Request Nos. 13 and 14 seek all documents related to such complaints and investigations. In lieu of providing a comprehensive, narrative response to the above interrogatories, Defendant limited itself, as it did for the related document requests, to producing documents that relate to "formal complaints" of "racial mistreatment" occurring at the Alpharetta Waffle House. According to defense counsel Sandra Kim, "formal complaints" means written or documented complaints located at the Alpharetta unit or the corporate office in Norcross, Georgia.[6] Defendant has refused to inquire about responsive information that has not been documented, and has refused to search for responsive documents with the district and regional managers.

It was only after months of recalcitrance and only after the relevant depositions had occurred that Defendant provided a handful of documents on April

---

[6] Ms. Kim made this representation during the meet and confer on February 27, 2004.

1, 2004 and again on April 21, 2004 and April 28, 2004, including some limited

customer complaint information.  Nonetheless, Defendant still refuses to provide

full information about customer complaints or any information on its investigation

or response, nor will it fully respond to relevant interrogatories and document

requests concerning whether these documents represent all complaints responsive

to Plaintiffs' requests.

From the few customer service complaints produced within the past several

weeks, it is clear that Defendant has only provided what appears to be a print-out

of the initial screen of the Lotus "file" for each complainant. [7]  As Plaintiffs know

from their own Lotus investigatory file produced by Defendant, there are multiple

parts to the case file database, including a case summary (which was multiple

single-spaced pages long in Plaintiffs' case and which contains the witness

interviews and case manager's findings/conclusions).  Defendant has not only

withheld the remaining parts of the Lotus file that describe the complaint and

investigation, but Defendant has also withheld all other notes and paper records on

these complaints.  In so doing, Defendant has only nominally complied with

Interrogatory 10 and Document Request 13, and has entirely failed to provide the

---

[7] Plaintiffs understand from discovery that Waffle House's complaint documentation is logged
onto a Lotus software-based database.

critical supporting information covered by Interrogatory 11 and Document Request 14, which cover the investigations and resolutions of these complaints.

By limiting its response to written documents located at the unit and corporate office, Waffle House conveniently excludes any customer complaints that were received orally at any level. Defendant also excludes complaints that were received in writing by the relevant district or regional managers and that, for whatever reason, were not forwarded to corporate and retained. Defendant informed Plaintiffs on March 22, 2004 that it has a limited, unwritten document retention "policy" regarding complaints of race discrimination. *See* Ex. H. It appears from this policy as though units do not share in the corporate office's obligation to retain customer complaints of discrimination. In addition, the corporate office's retention policy is quite recent and its enforcement entirely unclear. Therefore, the institutional memory and records of individuals and offices outside of corporate become ever more critical.

This fact was brought into stark relief during the deposition of Mike Carter, the District Manager of the Alpharetta Unit at the time of the incident. Mr. Carter testified that as district manager, he documented customer complaints he received, regardless of the nature of the customer complaint. Mr. Carter also testified that he *has records of all documents he created, signed or on which his name appears from*

the time he became district manager to the present at a file in his home, which has not been searched for documents responsive to this request. *See* Ex. I (M. Carter Dep. at 113-114; 164-165). Through a proper, thorough records search and/or a verbal inquiry, Defendant should have disclosed and/or described these, and possibly many other, complaints.

Furthermore, in the course of discovery, it was revealed that Waffle House's legal department investigates customer complaints, and that two Waffle House attorneys – Valencia Porter and Sandra Kirk – commonly play an active role in the investigations (for example, Ms. Kirk was involved in the investigation of the Plaintiffs' complaint). *See* Ex. J (S. Kirk Dep. at 232-240); *See* Ex. K (4/24/02 letter from S. Kirk to D. Solomon). Although their files are responsive to Plaintiffs' requests, Waffle House has failed to produce them or state affirmatively that their files have been searched and that all responsive non-privileged documents contained therein have been produced.

Thus, Plaintiffs seek an order requiring Waffle House to provide complete information regarding customer complaints about service at the Alpharetta Waffle House and/or the employees at issue, including the investigation and resolution of those complaints, to search Mr. Carter's files and any files kept by the relevant district and/or regional managers for potentially responsive documents, to search

Ms. Porter's and Ms. Kirk's files for potentially nonprivileged responsive

documents, and provide supplemental interrogatory responses that encompass

information possessed by all employees likely to possess relevant information.

**B.  Prior Complaints Against the Discriminators**

> *Interrogatory No. 17*: *Identify and describe in detail any and all prior complaints, formal or informal, by African American customers or employees, including complaints of discrimination, regarding Plaintiffs' server, Jerry Wall, and /or Waffle House employee Melvin Nichelson.*
>
> > *Defendant's Response*: *Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10 and 11 with particularity. Defendant also objects to Interrogatory No. 17 on the grounds that it is overly broad in that it seeks information regarding "any and all" prior "complaints" by customers "regarding" Mr. Wall and/or Mr. Nichelson. Defendant further objects to the term, "complaints," without further definition as vague and ambiguous. Defendant further objects to this interrogatory on the grounds that it is insufficiently limited with respect to temporal scope. Defendant further objects to this interrogatory on the grounds that it seeks information not relevant to any claim, defense, or the subject matter of this litigation, and/or is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing general and specific objections, Defendant refers Plaintiffs to its objections and responses to Plaintiffs' Request Nos. 13 and 32.*
>
> *Document Request 32*: *Any and all documents relating to any and all customer or employee complaints, formal or informal, Waffle House received regarding Jerry Wall and/or Melvin Nichelson.*

- 17 -

> *Defendant's Response:  Defendant incorporates its General
> Objections as if fully set forth herein and restates General
> Objections Nos. 1, 3, 4, 5, 6, 7, 8, 9 and 10 with particularity.
> Defendant also objects to Request No. 32 on the grounds that it
> is overly broad and unduly burdensome in that it seeks "any
> and all" documents "relating to" "any and all" "complaints"
> Defendant received "regarding" Mr. Wall and/or Mr.
> Nichelson.  Defendant further objects to the terms,
> "complaints" and "informal," without further definition as
> vague and ambiguous.  Defendant further objects to this
> request on the grounds that it is insufficiently limited with
> respect to temporal scope.  Defendant further objects to this
> request on the grounds that it seeks information not relevant to
> any claim, defense, or the subject matter of this litigation,
> and/or is not reasonably calculated to lead to the discovery of
> admissible evidence.  Subject to and without waiver of the
> foregoing general and specific objections, Defendant refers
> Plaintiffs to its objections and responses to Plaintiffs' Request
> No. 13.  Defendant further responds that it will make available
> nonprivileged formal complaints by customers about Mr. Wall
> and/or Mr. Nichelson made or forwarded to Defendant's
> Norcross, Georgia corporate headquarters, or contained in Mr.
> Wall and Mr. Nichelson's personnel files, to the extent they
> exist.*

*See* Ex. C at pp. 28-29; Ex. D at pp. 36-37.

Jerry Wall is the white server who provided grossly substandard service to

the white Plaintiffs who were sitting with the African American Plaintiffs, who

failed to serve the African American Plaintiffs James and Dara Solomon, and who

threatened Plaintiff Terry Miller when he complained about this discriminatory

treatment of the mixed-race table.  Melvin Nichelson is the white assistant manager

who twice ignored Plaintiffs' complaints about Mr. Wall's service.  Waffle House

contends that Mr. Wall's and Mr. Nichelson's treatment of the Plaintiffs was not racially motivated, but, rather, constituted a mere "customer service" mishap, justifying only a written warning.  More specifically regarding Mr. Wall, the centerpiece of Waffle House's defense is that Mr. Wall is "mentally slow" and gets "easily confused," and thereby was somehow selectively unable to serve the one mixed-race table among his three tables.  *See* Ex. L (6/13/02 letter from A. Tassinari to Solomons).

Other than documents related to the complaint at issue in this case, Defendant's interrogatory responses do not mention any complaints regarding Mr. Wall or Mr. Nichelson and Defendant has not produced any complaints against Mr. Wall or Mr. Nichelson or any personnel documents supporting Defendant's theory of the case regarding Mr. Wall's alleged limitations.  This is the case despite the fact that two of Mr. Wall's supervisors, District Managers Chris Bostic and Mike Carter, testified at their depositions that they received complaints regarding Mr. Wall's service, and Mr. Carter testified that the complaints he received were related to Jerry's alleged slowness and forgetfulness or confusion.  *See* Ex. M (M. Carter Dep. at 117-120); *See* Ex. N (C. Bostic Dep. at 66-67).  Defendant has failed to conduct a proper inquiry to determine whether complaints about Mr. Wall discriminating against customers are known but not documented, or documented

but not held at the unit or corporate office.  Plaintiffs, therefore, move to compel

Defendant to provide complete and accurate information regarding all prior

complaints related to Mr. Wall and Mr. Nichelson.

>   Customer Discrimination Complaints

Defendant has no viable objection regarding complaints against Mr. Wall

and/or Mr. Nichelson that are known but not documented at the unit or corporate

office.  Defendant does not and cannot dispute that prior complaints of

discrimination against the offending employee are relevant to the offender's

motive and to the employer's policy of condoning discrimination.  *Griffin v. City of*

*Opa-Locka*, 261 F.3d 1295, 1314-1315 (11th Cir. 2001);  *see also Corley v.*

*Jackson Police Dep't.*, 566 F.2d 994, 1001 (5th Cir. 1978) ("history of racial

discrimination" by the employer "is an indispensable element of the plaintiff's

burden of proof" related to pretext); *Whalen v. McLean Trucking Co.*, Civ. Action

No. C82-1249A, 1983 U.S. Dist. LEXIS 20186, *4-5 (N.D. Ga. Jan. 7, 1983)

(granting plaintiff's motion to compel all complaints, charges or lawsuits of age

discrimination against Defendant without geographic limitation for the five years

preceding the plaintiff's discharge); *Catherman v. Reynolds Metals Co.*, No. C79-

775A, 1980 U.S. Dist. LEXIS 17038, at *3-4 (N.D. Ga. March 4, 1980) (granting

plaintiff's motion to compel prior complaints of discrimination).  In addition,

Defendant's claim that it is unduly burdensome to obtain information about *two* employees is ludicrous.

Defendant's responses should also include production of any written complaints that did not make their way to the corporate office, as well as a detailed description of any oral complaints. Restaurant customers who feel they have been subjected to race discrimination would likely complain orally to staff and/or managers at the restaurant, as evidenced by Mr. Bostic's and Mr. Carter's testimony. Such customers might also complain in writing to the appropriate district or regional managers, but not to corporate. Waffle House should be ordered to provide full and complete discovery of any such complaints.

Employee Discrimination Complaints

Defendant has also offered no support for its contention that co-worker complaints that Mr. Wall and/or Mr. Nichelson discriminated against them based on their race are irrelevant. None exists. It is simply illogical to suggest that racial animus expressed by Mr. Wall and/or Mr. Nichelson towards African American co-workers would not manifest itself against African American customers as well. Co-worker complaints of race discrimination are not only relevant to Mr. Wall's and Mr. Nichelson's motives, but may also be relevant to whether Defendant was

- 21 -

on notice that Mr. Wall and Mr. Nichelson harbored racial animus and whether Defendant permitted race discrimination to go unaddressed.

### "General" Complaints by Customers and Employees

Further, non-racial customer and employee complaints against Mr. Wall and Mr. Nichelson are relevant and discoverable for at least three reasons.  First, complaints that Defendant categorizes for its own purposes as general customer service or co-worker complaints may very well be complaints of discrimination. For example, there may be a pattern of complaints against Mr. Wall for refusing to serve African-American customers, or mistreating African-American co-workers, even though Waffle House has not chosen to identify each complaint as race-based.  Such complaints could lead to the discovery of admissible evidence relevant to establish racial animus on the part of Mr. Wall.  Plaintiffs should have an opportunity to ascertain to what degree, if any, Mr. Wall and Mr. Nichelson have a history of poor customer service or general conduct problems, and to what degree they have a history of discrimination (addressed or ignored by their superiors).[8]

---

[8] As stated by the U.S. Court of Appeals for the Fifth Circuit, "open disclosure of all potentially relevant information is the keynote of the Federal Discovery Rules." *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 307 (5th Cir. 1973).  *See also Donovan v. Lynn's Food Stores, Inc.*, No. 181-169, 1981 U.S. Dist. LEXIS 17619, at * 4 (S.D. Ga. Dec. 21, 1981) (allowing discovery of
(continued...)

Second, Defendant has articulated multiple affirmative defenses that underscore the relevance of Mr. Wall's and Mr. Nichelson's histories of customer service/conduct problems. Defendant alleges, for example, that even if Mr. Wall and Mr. Nichelson discriminated against Plaintiffs on the basis of race: 1) Defendant did not have notice of such issues; 2) to the extent Defendant had notice, Defendant took prompt and effective action to remedy the problem and prevent future problems; and/or 3) Mr. Wall and Mr. Nichelson would have behaved in the same way without discriminatory animus. *See supra* pp. 5-6. The extent and nature of prior complaints by employees and customers against Mr. Wall and Mr. Nichelson are relevant to whether Defendant had notice that these problems existed, the nature and extent of the problems known by Defendant, whether Defendant responded promptly and effectively to any problems that existed, and whether Mr. Wall and/or Mr. Nichelson would have treated white customers in a similar manner. Such evidence is pertinent to both liability and damages. *See, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805 (1973); *Kolstad v. ADA*, 527 U.S. 526, 535-538 (1999); *EEOC v. W&O Inc.*, 213 F.3d 600, 611 (11th Cir. 2000); *Corley,* 566 F.2d at 1001.

---

(..continued)

documents when "there is any possibility that they may be relevant to the subject matter of the
(continued...)

Third, with respect to Mr. Wall at the very least, Defendant has squarely

placed Mr. Wall's customer service problems at issue.  Defendant's core defense is

that Mr. Wall's disparate treatment of the mixed-race table was due to his mental

slowness.  *See* Ex. L.  Further, Defendant specifically claims that Mr. Wall has a

history of poor service to customers of all races.  As such, Defendant must be

compelled to produce all complaints against Mr. Wall and Mr. Nichelson, whose

presence or absence could provide evidence – or could reasonably lead to the

discovery of evidence – that supports or refutes Defendant's theory of the case.

## C.  Personnel Files of Relevant Employees, Managers and Agents

> *Document Request 11:  Any and all documents contained in or relating to personnel files and/or records for each and every employee, manager, district manager, agent or representative of Defendant who was present in the Alpharetta Waffle House on April 21, 2002.  Include in your response documents relating to time sheets and other records relating to hours worked by these persons on April 21, 2002, training received, disciplinary records, identifying information, race, hire date, positions held, promotions and demotions, performance reviews, terminations and/or discrimination or customer complaints.*
>
> > *Defendant's Response:  Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 3, 4, 5, 6, 7, 8, 9 and 10 with particularity. Defendant also objects to Request No. 11 on the grounds that it is overly broad and unduly burdensome in that it seeks "any*

_____

(..continued)
suit").

and all" documents contained in or "relating to" personnel files or "records" for "each and every" employee, manager, district manager, agent or "representative" of Defendant "present" at the Alpharetta, Georgia Waffle House during the entire day of the alleged incident. It is unreasonably and unduly burdensome to require Defendant to identify all such persons who were merely "present" in its restaurant during the entire day of Plaintiffs' alleged visit. Defendant further objects to this request on the ground that it seeks information not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing general and specific objections, Defendant responds that it will make available relevant documents contained in the personnel file(s) for the individuals with whom Plaintiffs may have had contact and who are listed in Attachment "A" to Defendant's Initial Disclosures as maintained at the Alpharetta Waffle House, unit # 1125, or at Defendant's Norcross, Georgia corporate headquarters, to the extent any such documents exist, and upon entry of an appropriate protective order. Such documents will be limited to the relevant time frame.

<u>Document Request 12</u>: Any and all documents contained in or relating to personnel files and/or records for each and every employee, manager, district manager, agent or representative of Defendant who engaged in subsequent communications with Plaintiffs or who was involved in any investigation of, or response to, the Plaintiffs' complaint. Include in your response documents relating to training received, disciplinary records, identifying information, race, hire date, positions held, promotions and demotions, performance review, terminations and/or discrimination or customer complaints.

    <u>Defendant's Response</u>: Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 3, 4, 5, 6, 7, 8, 9 and 10 with particularity. Defendant also objects to Request No. 12 on the grounds that it is overly broad, unduly burdensome, vague and ambiguous in that it requires Defendant to produce "any and all" documents "contained in" or "relating to" personnel files or "records"

> for "each and every" employee, manager, district manager,
> agent or "representative" of Defendant who "engaged in
> subsequent communications with Plaintiffs" or who was
> "involved" in any investigation or "response" to Plaintiffs'
> complaint.  Defendant further objects to this request on the
> ground that it seeks information not reasonably calculated to
> lead to the discovery of admissible evidence.  Defendant further
> objects to this request to the extent that it seeks documents
> protected from disclosure by the attorney-client privilege, self-
> critical analysis privilege, common interest privilege and/or the
> work product doctrine.  Subject to and without waiver of the
> foregoing general and specific objections, Defendant refers
> Plaintiffs to its objections and responses to Request No. 12.

See Ex. D at pp. 14-16.

Despite Defendant's statement that it will produce responsive documents,

Defendant is unable to tell Plaintiffs whether it has produced all personnel files for

the managers present at the Waffle House restaurant at the time of the incident and

for the individuals involved in the investigation.  In fact, Defendant has repeatedly

emphasized that additional documents may still be located at corporate and

produced. [9]  As a result, more than six months after serving their discovery

requests, Plaintiffs still do not know whether critical employment background data

exists for many of the key individuals in the case.

Defendant has stated that it has exhausted its search of the unit and that no

personnel files or documents exist for the hourly employees who were involved in,

- 26 -

or observed, the incident at issue in this case.  This representation is not only disconcerting in its own right, but it is also confusing given that while Defendant's own document retention policy does not cover customer complaints, it does cover employee records.  More specifically it states that inactive "employee history records" are retained for four years.  *See* Ex. O at WHSLO-00075.  In light of the fact that the incident at issue in this case occurred within the last four years, all personnel documents for all relevant employees should still be in the possession of Waffle House.

Although Defendant does not seem to be resting on any of its prior objections for its failure to produce the above documents, Defendant's relevance objection is simply not viable.  The personnel files of all individuals who observed or were involved in the events in question, or who were involved in the decisions about how to respond to the incident, are relevant to this case.  *See, e.g., Fox-Martin v. H.J. Heinz Operations*, No. 02-4121-JAR, 2003 U.S. Dist. LEXIS 23571, at *4-5 (D. Kan. Dec. 19, 2003); *cf. Donovan*, 1981 U.S. Dist. LEXIS 17619, at *4-5 (compelling Defendant to produce personnel records that enabled Plaintiff to review the defendants' "record system as a whole" so Plaintiffs could "ferret[] out

_____

(..continued)
[9] *See* Ex. H.

the facts of the case"). Indeed, defense counsel conceded during the meet and confer that Plaintiffs are entitled to records relating to, for example, promotion/demotion/termination information, customer complaints, employee complaints, disciplinary documents and performance reviews. Waffle House should therefore be required to make a complete production.

Defendant's objection based on the confidentiality of the information sought is similarly without merit. *See, e.g., Donovan*, 1981 U.S. Dist. LEXIS 17619, at *6-7 (personnel records are "not the personal property of each individual but are records developed and maintained by the employer in the normal course of business" and allowing any privacy expectation to bar inspection of those documents would "frustrate the policy of liberal discovery"). Further, Defendant's disclosure of *some* documents for managers and the investigator makes clear that Defendant's concerns about confidentiality are either fleeting or selectively enforced. Defendant's claim that no personnel documents exist for hourly employees is difficult to believe. However, even if Defendant has been delinquent in the maintenance of its employee records at the units, Mr. Carter's deposition testimony makes clear that Defendant has not, in fact, conducted a thorough serarch for all personnel documents related to hourly employees. *See* Ex. I (M.

Carter Dep. at 164-65).  Plaintiffs are entitled to these documents and Defendant

should be compelled to produce them by a date certain.[10]

### D.   Customer Service/ Non-Discrimination Policies and Related Training

Through the following three interrogatories, Plaintiffs seek information

regarding Waffle House's policies, guidelines and training related to customer

service and race discrimination, including information about the training of the

particular individuals involved in the incident at issue in this Complaint, and those

individuals involved in the investigation of and response to the incident.

> *Interrogatory No. 7:*  *Identify and describe in detail your policies,
> guidelines, training programs, procedures and practices with regard
> to customer service, including the seating of customers, the service of
> customers, the order in which customers are to be served, and the
> "greeting" of customers when they enter the restaurant, the authority
> or discretion to deny service, and the discipline or counseling of
> employees in response to complaints from customers, and for each,
> indicate whether the policy, training program, guideline, procedure
> or practice is written or unwritten.  With regard to your training
> programs, if any, include in your description a detailed explanation of
> the contents of the training, the frequency of such training and by
> whom such training is received.*

> *Defendant's Response:*  *Defendant incorporates its General
> Objections as if fully set forth herein and restates General*

---

[10] Moreover, if documents pertaining to a given deponent are produced after that individual's
deposition, such a delay is good cause to re-depose the individual, and to continue the deposition
beyond the seven hours permitted by the Federal Rules of Evidence if all seven hours have
already been expended.

*Objections Nos. 1, 2, 6, 7, 8, 9 and 11 with particularity.
Defendant also objects to Interrogatory No. 7 on the grounds
that it is ambiguous, overly broad and unduly burdensome in
that it asks Defendant to "identify" "practices" "with regard to
customer service" and the counseling of employees in response
to "complaints" from customers. Defendant further objects to
the term, "complaints," without further definition as vague and
ambiguous. Subject to and without waiver of the foregoing
general and specific objections, Defendant responds that it will
make available, pursuant to Federal Rule of Civil Procedure
33(d), Waffle House's customer treatment policies and
procedures for management and hourly employees, including
its customer nondiscrimination policy and policy discussing the
denial of service for harassing and/or inappropriate behavior,
applicable to Unit #1125 within the relevant time frame. These
policies and procedures are relayed through various mediums
to all hourly and management employees within Unit #1125, as
well as a number of individuals responsible for overseeing the
operations within Unit #1125. Hourly employees, among other
things: (a) watch training videos discussing customer service,
including customer nondiscrimination; (b) receive orientation
training with a Human Resources Specialist, who reviews
Defendant's policies and procedures with the employee; (c)
receive "on the floor" training with a Unit Training
Coordinator, among others; and (d) review daily "Target And
Train" sheets, which emphasize operational tips and important
policies, such as the nondiscrimination policy. Managers'
training includes, but is not limited to, the following: (a)
watching training videotapes; (b) reviewing management
training materials, including Defendant's "Policies and
Procedures Manual"; (c) receipt and understanding of the
"Ten Laws of Management Conduct"; (d) reviewing daily
"Target And Train" sheets, which emphasize operational tips
and important policies, such as the nondiscrimination policy;
(e) carrying the Smart Start card and reciting Defendant's
nondiscrimination policy and the Waffle House Creed before
Waffle House meetings; (f) receipt and review of "Management
Alerts," which emphasize important Waffle House policies and*

- 30 -

procedures including, but not limited to, prevention of race-based mistreatment; and (g) Unit Managers must graduate from Waffle House University before they are permitted to run their own unit.  Such training and coaching occurs formally and/or informally on a constant basis, from the employee's or manager's first day of work through his/her last.  By way of further response, Defendant refers Plaintiffs to its objections and responses to Interrogatory Nos. 6 and 10.

*Interrogatory No. 8:*  Identify and describe in detail your policies, guidelines, training programs, procedures and practices, if any, that relate to race discrimination against customers during the five years prior to the filing of this action, including your policies, guidelines, procedures and practices, if any, regarding the investigation, evaluation, processing or resolution of any complaints or claims of racial bias, discrimination or harassment.  With regard to your training programs, if any, include in your description an explanation of the contents of the training, the frequency of such training and by whom such training is received.

*Defendant's Response:*  Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 2, 6, 7, 8, 9 and 11 with particularity. Defendant also objects to Interrogatory No. 8 on the grounds that it is ambiguous, overly broad and unduly burdensome in that it asks Defendant to "identify" "practices" that "relate to" "race discrimination against customers."  Defendant further objects to this interrogatory on the grounds that it seeks to disclose documents protected by the attorney-client privilege, self-critical analysis privilege, common interest privilege and/or the work product doctrine.  Subject to and without waiver of the foregoing general and specific objections, Defendant responds that it will make available, pursuant to Federal Rule of Civil Procedure 33(d), copies of Waffle House's customer treatment policies and procedures, including its customer nondiscrimination policy, applicable to Unit #1125 within the relevant time frame.  These policies and procedures are relayed through various mediums to all hourly and

- 31 -

*management employees within Unit #1125, as well as a number of individuals responsible for overseeing the operations within Unit #1125. Such training and coaching occurs formally and/or informally on a constant basis, from the employee's first day of work through his/her last. By way of further response, Defendant refers Plaintiffs to its objections and responses to Interrogatory No. 7.*

*Interrogatory No. 9: For each employee, manager, agent or representative of Waffle House identified in response to interrogatory numbers 2, 4 and 5, indicate whether he or she received any of the training identified in response to Interrogatory numbers 7 and 8, including the dates of such training, the substance of such training, whether each employee successfully completed the training and the identity of any documents reflecting his or her attendance at such training or completion of such training.*

*Defendant's Response: Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 3, 5, 8, 9, 10 and 11 with particularity. Defendant further incorporates its objections and responses to Plaintiffs' Interrogatories Nos. 2, 4, and 5. Subject to and without waiver of the foregoing general and specific objections, Defendant responds that it will make available, pursuant to Federal Rule of Civil Procedure 33(d), copies of Waffle House's customer treatment policies and procedures, including its customer nondiscrimination policy, applicable to Unit #1125 within the relevant time frame. These policies and procedures are relayed through various mediums to all hourly and management employees within Unit #1125, as well as a number of individuals responsible for overseeing the operations within Unit #1125. Such training and coaching occurs formally and/or informally on a constant basis, from the employee's first day of work through his/her last. By way of further response, Defendant will make available responsive records of attendance at any such training programs or records of receipt of applicable training concerning Unit #1125 within the relevant time frame. By way of further response, Defendant*

- 32 -

> *refers Plaintiffs to its objections and responses to Interrogatory*
> *No. 7.*

*See* Ex. C at pp. 14-19.

Interrogatories 7 and 8 pertain to general employee training. Waffle House

has provided only a basic, and admittedly incomplete, list of the kinds of training

that are given, and has provided only limited information on the frequency of these

trainings and the identities of the trainers. Similarly, although training materials

have been produced, those documents do not provide a complete picture of which

types of employees receive what training, how often, and by whom.

In response to Interrogatory No. 9, which pertains to the training of the

specific employees and managers involved in the incident at the Alpharetta Waffle

House, or in the subsequent investigation of and response to the incident,

Defendant stated that it would produce documents reflecting the attendance of

these employees at training sessions. Defendant, however, has produced only three

documents that show that certain employees read Defendant's non-discrimination

policies at one time in 2002. *See* Ex. P. These documents simply do not provide a

complete picture of whether, and to what extent, any of the individuals at issue

participated in any customer service or nondiscrimination trainings.

Defendant's relevance objection is meritless. The steps that Waffle House

takes to train its employees in issues relating to discrimination as well as customer

- 33 -

service, and the degree to which the particular individuals at issue in this case received such training, is relevant to, and likely to lead to the discovery of admissible evidence regarding: 1) Plaintiffs' claims of race discrimination; 2) Defendant's multiple affirmative defenses regarding its efforts to prevent and/or respond to race discrimination; 3) Plaintiffs' claims for punitive damages related to Defendant's failure to take appropriate and effective measures to prevent or respond to race discrimination; and 4) Defendant's enforcement of its customer service policies generally.  The information is thus clearly discoverable under Federal Rule of Civil Procedure 26(b)(1).

In its letter dated March 22, 2004, Defendant reiterates that more documents related to training may be forthcoming, *see* Ex. H at p. 2; however, Defendant's continuing mantra about the difficulty of responding to these requests rings hollow.  Regarding the general training information, Defendant should be aware of which groups of employees and managers are trained in what areas, the frequency of such training and the providers of such training, without having to comb through every document that may be used in those trainings.  With respect to the information about the specific individuals, Defendant has identified through discovery approximately 10 individuals in two locations (the unit and corporate) who were involved in the incident or its investigation.  The request to provide

- 34 -

discovery as to both these subjects is, therefore, neither overbroad nor unduly

burdensome.

### E.   Insurance Agreements or Policies

> *Request for Production No. 34:*  Any and all insurance agreements or
> policies under which any insurance company or other entity may be
> liable to satisfy all or part of a judgment or settlement that may be
> entered or reached in this action, or to indemnify or reimburse for
> payments made to satisfy such judgment or settlement, including any
> excess or umbrella policies.

>> *Defendant's Response:*  Defendant incorporates its General
>> Objections as if fully set forth herein and restates General
>> Objections Nos. 1, 3, 5, 6, 7, 8, 9 and 10 with particularity.
>> Subject to and without waiver of the foregoing general and
>> specific objections, Defendant refers Plaintiffs to Attachment
>> "E" of Defendant's Initial Disclosures.

*See* Ex. D at p. 38-39.

Defendant's response, which identifies Attachment E to Defendant's Initial

Disclosures, simply refers to a policy that was in effect from May 31, 2003 to May

31, 2004.  The discriminatory conduct in this case occurred in April 2002.  Upon

information and belief, Plaintiffs believe that Attachment E is incomplete because

it appears that until June 2003, the policy did not cover customer complaints, at

which time Defendant added coverage that would include customer complaints.

*See* Ex. S.  Under Rule 26(a)(1)(D) of the Federal Rules of Civil Procedure,

Plaintiffs are entitled to have any and all applicable insurance policies or

agreements, including and any and all attachments to such policies or agreements.
*See* Fed. R. Civ. P. 26(a)(1)(D).

Moreover, Defendant's claim of the joint defense privilege for

correspondence to its insurance carrier dated September 9, 2003 and November 11,

2003, suggests that it has tendered its defense to its insurer. *See* Ex. Q. However,

the policy Defendant produced does not show coverage for this lawsuit or a

provision requiring Defendant to tender a claim. Because the log indicates that

tender was made, Plaintiffs believe that Defendant is withholding the applicable

polic(ies) or agreement(s). Plaintiffs, therefore, request that the Court order

Defendant to produce full and complete copies of any and all applicable insurance

policies and any and all related documents, invoices and attachments for the period

in question, as required by Rule 26(a)(1)(D).

### F.   Defendant's Affirmative Defenses

> *Interrogatory No. 20: Identify and describe in detail any and all information providing a factual basis for your claims or defenses in this action, including each and every one of the affirmative defenses raised in your Answer.*
>
> > *Defendant's Amended Response: Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 3, 4, 5, 8, 9 and 11 with particularity. Defendant also objects to Interrogatory No. 20 on the grounds that it is overly broad and unduly burdensome in that it seeks "any and all" information providing "a factual basis" for claims and defenses in this action. Defendant further*

- 36 -

*objects to Interrogatory No. 20 on the grounds that it seeks information protected from disclosure by the work product doctrine, and seeks to disclose defense counsel's mental impressions. Defendant further objects to this interrogatory because discovery has just commenced and, absent further discovery, it is overly burdensome for Defendant to determine what facts are or may be relevant to each of its defenses to Plaintiffs' claims. Inquiring about the factual details of Defendant's defenses at this stage of the case is therefore premature and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, some of Defendant's defenses are legal defenses that do not depend on factual support, and inquiring about the facts underlying these legal defenses is unduly burdensome and is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory on the grounds that the recitation of every fact that somehow relates to any defense stated in Defendant's Answer, or somehow formed the "basis" for such a defense, would be unduly burdensome and overly broad. Defendant further objects to this interrogatory in that it exceeds the scope of appropriate discovery in that it constitutes a premature contention interrogatory. Subject to and without waiver of the foregoing objections, Defendant denies any violations of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, or Title 11 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000a, et seq. with respect to Waffle House's treatment of Plaintiffs. Defendant incorporates its self-explanatory affirmative defenses set forth in its Answer and invites Plaintiffs' counsel to explain which, if any, of the asserted defenses they find confusing.*

*See* Ex. R.

Interrogatory No. 20 requires Defendant to provide the factual basis for each of its asserted affirmative defenses. Defendant's response to Interrogatory No. 20 fails to do so and, instead, simply reiterates Defendant's affirmative defenses.

- 37 -

Plaintiffs are entitled to a factual description of the bases for Defendant's affirmative defenses. *See Wallace v. G.E., Co.*, Civ. Action No. 87-1236, 1988 U.S. Dist. LEXIS 2582, at *7 (E.D. Pa. March 30, 1988) (compelling Defendant to provide information concerning the factual bases for its affirmative defenses); *Sabin v. St. Croix Basic Services, et al.*, Civ. Action No. 2002/80, 2003 U.S. Dist. LEXIS 24525, at * 9-10 (D.V.I. Oct. 6, 2003) (same); *cf. Tomka v. Seiler Corp.*, 66 F.3d 1295, 1312 (2d Cir. 1995) (requiring the defendant to do more than assert a conclusory affirmative defense to overcome summary judgment).

Defendant presents numerous factual affirmative defenses.  These defenses go to liability as well as damages, including punitive damages.  For example, Defendant states that to the degree a Waffle House non-managerial employee discriminated against Plaintiffs, the conduct was outside the scope of his/her employment.  *See* Answer at pp. 4 (Def.'s Seventh Defense) and 6 (Def.'s Fifteenth Defense).  Further, Defendant claims that it did not have notice of the discrimination and that, even if it did, it acted reasonably to prevent and remedy any discrimination and to comply with relevant laws.  *See id.* at pp. 3-6 (Def.'s Fourth, Eighth, Sixteenth Defenses).  Defendant also avers that even if race was a motivating factor in the conduct at issue in the complaint, "the same would have occurred absent consideration of race."  *See id.* at p. 3 (Def.'s Fifth Defense).

- 38 -

Further, Defendant alleges that Plaintiffs unreasonably failed to utilize Defendant's remedial procedure, to respond to Defendant's corrective steps, or to mitigate their damages. *See id.* at pp. 4-6 (Def.'s Eighth and Thirteenth Defenses).

These defenses, among others, implicate not only Plaintiffs' individual disparate treatment claims, but also Plaintiffs' claim that their experience at Waffle House was part of a pattern and practice of discrimination by Defendant and that punitive damages are warranted.  The existence of prior complaints, the investigative process, the job responsibilities of various individuals (including the responsibility to respond to and/or report discrimination), the behavior and performance history of individuals, the training that individuals experienced, how Plaintiffs' utilization of the investigative process compared with Defendant's alleged requirements, and other facts potentially underlying these affirmative defenses are important to Plaintiffs' claims of liability and damages.

Rule 26(b) does not allow the Defendants to keep Plaintiffs in the dark about the factual bases for any of these affirmative defenses.  Under the rules, it is entirely proper, and indeed required, that Defendant respond to a discovery request such as Interrogatory No. 20, which is designed to probe the strength of Defendant's affirmative defenses.  *See, e.g., Wallace,* 1988 U.S. Dist. LEXIS

2582, at *7; *Sabin,* 2003 U.S. Dist. LEXIS 24525, at * 9-10.  Furthermore,

Defendant has an obligation under Rule 11 of the Federal Rules of Civil Procedure

to have a good faith basis for its pleadings.  *See* Fed. R. Civ. P. 11.  Defendant

should be ordered to respond substantively and in sufficient detail to Interrogatory

No. 20 such that Plaintiffs are able are able to ascertain whether the defenses have

any factual support whatsoever, and whether that discovery leads to additional

relevant information.

### G.    Defendant's Management Policies, Financial Statements, Annual Report, and Organizational Chart

The following two requests for documents seek relevant corporate

information including the chain of command, management training materials,

duties and responsibilities of managers, and financial statements.

> *Request for Production No. 22:  Copies of the following documents (including prior versions in the last five years):  The Waffle House Associate Handbook, Waffle House Annual Report and/or any and all financial statements, documents identifying the directors and officers of Waffle House, Inc. during the last five years, the standard management agreements for unit managers and district managers, the Waffle House "Back to Basics" evaluation form, Waffle House's "Smart Start" policies, documents relating to Waffle House's case management investigation system, documents relating to Waffle House's 1-800 Hot Line, Waffle House Rules posters and policies relating to customer service or non-discrimination, Waffle House's policies and procedures manual, Waffle House's training videotapes, documents relating to Waffle House's Mystery Shopping system, documents relating to the Waffle House Training Program, the Waffle*

*House Management Training Manual, the Waffle House Systems Operations Manual, documents relating to the Waffle House Way, documents relating to the Waffle House Unit Information System, documents relating to Waffle House University and the Waffle House Training Manual.*

> *Defendant's Response:  Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 3, 4, 5, 6, 7, 8, 9 and 10 with particularity. Defendant also objects to Request No. 22 on the grounds that it is grossly overbroad and unduly burdensome in that it seeks "any and all" documents "relating to" the numerous and varied categories of information and documents that Plaintiffs list.  Defendant further objects to this request to the extent that it seeks information not calculated to lead to the discovery of admissible evidence.  Defendant further objects to this request to the extent it seeks sensitive business information, commercially private data and/or proprietary or confidential information.  Subject to and without waiver of the foregoing general and specific objections, Defendant will make available relevant portions of the following, if any (and to the extent such documents exist), which reference Defendant's: 1) customer nondiscrimination policies; 2) manager and store employee training on customer nondiscrimination policies; 3) policies and procedures discussing greeting and seating of customers; and 4) policies and procedures discussing customer treatment. Such documents will only be made available for the relevant time frame and geographic market:*

> 1. *Waffle House Associate Handbook;*
> 2. *Waffle House "Back to Basics" evaluation form;*
> 3. *Waffle House's 1-800 Hotline;*
> 4. *Waffle House "House Rules" statements;*
> 5. *Waffle House Policies and Procedures manual;*
> 6. *Waffle House "Smart Start" policies;*
> 7. *Waffle House "Mystery Shopping" system;*
> 8. *Waffle House restaurant employee and unit manager training videotapes, if any exist, discussing*

> *Waffle House's customer greeting, seating, and*
> *nondiscrimination policies;*
> 9.    *Waffle House Training Program;*
> 10.   *Waffle House Management Training Manual;*
> 11.   *Waffle House Systems Operations Manual;*
> 12.   *"Waffle House Way"*
> 13.   *"Waffle House University" training materials; and*
> 14.   *Waffle House Training Manual.*
>
> *Defendant further responds by referring Plaintiffs to its*
> *objections and responses to Plaintiffs' Requests Nos. 18 and 20.*
>
> *Request for Production No. 26: Any and all organizational charts*
> *that Waffle House has in its possession relating to the five years prior*
> *to the filing of this action.*
>
>> *Defendant's Response:  Defendant incorporates its General*
>> *Objections as if fully set forth herein and restates General*
>> *Objections Nos. 1, 3, 5, 6, 7, 8, 9 and 10 with particularity.*
>> *Defendant also objects to Request No. 26 on the ground that it*
>> *is insufficiently limited with respect to temporal or geographic*
>> *scope.  Defendant further objects to this request on the grounds*
>> *that it seeks information which is neither relevant to this action*
>> *nor reasonably calculated to lead to the discovery of admissible*
>> *evidence.  Subject to and without waiver of the foregoing*
>> *general and specific objections, Defendant responds that it will*
>> *make available one or more organizational charts applicable to*
>> *the operations of the Alpharetta unit, #1125, within the relevant*
>> *time frame.*

*See* Ex. D at pp. 26-28; 31-32.

Document Request Nos. 22 and 26 seek relevant corporate information

including training materials, duties of managers, financial statements, and the chain

of command.  Defendant objected based on relevance and stated that the requests

were overly burdensome, but declared that it would produce some of the requested documents.

Request No. 22 seeks a number of specifically listed handbooks, training manuals, financial information and other documents.  Defendant has not produced a number of the documents requested, such as the annual reports (other than the cover page and first page and, for 2003, page 25) and/or the financial statements. Information about a defendant's financial status is relevant and reasonably calculated to lead to the discovery of admissible evidence related to Plaintiffs' punitive damages claim.  *See e.g., Singleton v. RPM Pizza*, Civil Action No. 03-2219, 2004 U.S. Dist. LEXIS 1033, at *4-5 (E.D. La. Jan. 26, 2004).  The Court, therefore, should order the Defendant to produce its annual reports and financial statements in full from November 1998 through the present.

Defendant produced some of the requested training and management procedures, but specifically withheld numerous pages from many manuals (for example, only 19 of the 267 pages of the Management Training System have been produced and only selected pages of 7 sections of the roughly 40 sections of the Management Policies and Procedures Manual have been produced).  In addition, Defense counsel has stated that the review of documents is ongoing and that more documents "could be" produced.  As a result, Plaintiffs are missing not only large

parts of some relevant documents but also, potentially, entire manuals or other responsive documents.  The training manuals and documents specifying the duties and responsibilities of managers are directly relevant to issues such as how the incident at issue should have been handled, how Mr. Wall and Mr. Nichelson should have been disciplined, and who had responsibility for these activities.  Plaintiffs cannot assess the appropriateness, effectiveness or enforcement of Defendant's training efforts and management policies without reviewing the documents themselves.

Request No. 26 is for "[a]ny and all organizational charts that Waffle House has in its possession."  Defendant responded by stating it would produce "one or more organizational charts applicable to the operations of the Alpharetta unit, #1125, within the relevant time frame."  Defense counsel represented during the meet and confer that Defendant provided an organizational "chart," referring Plaintiffs' counsel to a short list of managers at the top of on an investigation document.  *See* Ex. S.  Plaintiffs request organizational information, which will show the hierarchy of both the unit involved and the entire organization.  Organizational charts for the region and division in which the Alpharetta Waffle House sits, as well as those covering the employees who investigated Plaintiffs' complaint, are clearly relevant to the chain of command within the company.  This

information would help Plaintiffs assess who was, or should have been, involved in certain decisions related to the incident and the subsequent investigation. Consequently, the charts provide information relevant to liability and damages and should be produced.

**1. Defendant's Records Retention Policies for Customer Complaints**

*Interrogatory No. 14: Describe in detail your documents or records retention policies, practices or procedures, if any, relating to customer complaints, including calls to your toll-free telephone number and identify any documents reflecting these policies, practices and procedures.*

> *Defendant's Response: Defendant incorporates its General Objections as if fully set forth herein and restates General Objections Nos. 1, 2, 8, 10 and 11 with particularity. Defendant also objects to Interrogatory No. 14 on the grounds that it is ambiguous, overly broad and unduly burdensome in that it requires Defendant to describe "practices" "relating to" customer "complaints." Subject to and without waiver of the foregoing general and specific objections, Defendant responds that it has a document retention policy regarding the maintenance of documents pertaining to: 1) customer complaints of racial mistreatment; 2) investigation of any such complaints; 3) discipline of any associate employee or manager for customer service problems based on racial mistreatment; and 4) training materials concerning Defendant's customer nondiscrimination policy. Defendant further responds that it will make available, pursuant to Federal Rule of Civil Procedure 33(d), Defendant's document retention policies for the relevant time frame within Unit #1125.*

*Document Request 24: Any and all documents relating to your document retention policies, practices or procedures, if any, relating*

- 45 -

>to customer complaints, including calls to your toll-free telephone
>number.

>>*Defendant's Response:*  Defendant incorporates its General
>>Objections as if fully set forth herein and restates General
>>Objections Nos. 1, 3, 5, 6, 7, 8, 9 and 10 with particularity.
>>Defendant also objects to Request No. 24 on the grounds that it
>>is overly broad and unduly burdensome in that it requires
>>Defendant to produce "any and all" documents "relating to"
>>its document retention policies, "practices," or procedures
>>"relating to" customer "complaints." Defendant further
>>objects to this request on the grounds that it is insufficiently
>>limited with respect to temporal and geographic scope.  Subject
>>to and without waiver of the foregoing general and specific
>>objections, Defendant responds that it will make available its
>>document retention policies that apply to complaints of
>>customer race discrimination made to the Alpharetta unit,
>>#1125, and/or Defendant's corporate headquarters.

*See* Ex. C at p. 24; Ex. D at pp. 29-30.

As is clear, Defendant provided no substantive response to Plaintiffs'

interrogatory.  Instead, Defendant produced one three-page document related to

document retention.  *See* Ex. O.  On its face, however, this document makes no

mention of retention policies regarding customer complaints.  In light of

Defendant's responses indicating that such policies exist, Plaintiffs' counsel

inquired during the meet and confer whether this lone document somehow covered

customer complaints and related documents.  Ms. Kim responded that the

document "speaks for itself."  Ms. Weiss then asked Ms. Kim to confirm that no

other oral or written document retention polices, practices or procedures exist for

production or description.  Ms. Kim refused.[11]  Three weeks later, on March 22,

2004, Defendant wrote the following to Plaintiffs:

> With respect to customer complaints of race discrimination, the Company's
> policy of retention is that such complaints are and have been logged in its
> database since the year 2000.  In addition, since at least as far back as 1998,
> the Company has retained documentation of customer complaints of race
> discrimination and their related investigation files.

*See* Ex. H.

Despite this eleventh hour description of Defendant's unwritten "policy" for

retaining customer complaints of race discrimination, Defendant's response to

these discovery requests is inadequate.  To the degree Defendant continues to rely

on Federal Rule of Civil Procedure 33(d) and the one document retention policy

Defendant produced, this rule permits a party to produce business records in lieu of

providing a narrative answer to an interrogatory.  However, the information sought

must be ascertainable from the document produced and the party relying on Rule

33(d) must specify where the information can be found "in sufficient detail to

permit the interrogating party to locate and to identify, as readily as can the party

---

[11] When Ms. Weiss sought further clarification from Ms. Kim as to whether there are any written
or orally conveyed policies, practices or procedures regarding the retention of documents related
to customer complaints, Ms. Kim responded only by stating that this was the only "written
policy" Waffle House has.  Ms. Weiss then explained that the interrogatory also sought practices
and procedures and that she wanted to clarify whether this was the only written *or oral* policy,
*practice or procedure*.  Ms. Kim would not respond to this question and insisted that her prior
answer had been adequate.

served, the records from which the answer may be ascertained." Defendant has failed to comply with these requirements.

To the degree Defendant is now relying on its limited March 22, 2004 summary of the corporate office's retention policy for race discrimination complaints, this description is deficient in two critical ways. First, this limited summary does not give important information about how, where, and by whom race discrimination complaints are retained. In fact, the policy does not even clearly state how long race discrimination complaints have been retained for; instead, the brief summary states that such complaints have been retained "at least as far back as 1998." Second, Defendant limits its response to document retention policies for race discrimination complaints. However, Plaintiffs' requests seek document retention policies for all customer complaints.

Whether Defendant has a policy for complaints it deems unrelated to race discrimination and, if so, how that policy compares with the policy related to race discrimination complaints is relevant to Defendant's notice of discrimination, prevention and remedial efforts regarding discrimination, document production regarding complaints, and several other issues. This is particularly true in light of the fact that, as discussed earlier, Defendant may classify race discrimination complaints as mere complaints of poor customer service.

- 48 -

Waffle House should be compelled to: 1) produce any and all documents of any *policy, practice or procedure* at the unit, district or corporate level that relate to the process, duration, and location for retaining customer complaints and the investigations related thereto, as well as the person(s) responsible for such retention; and 2) describe in detail any unwritten policies, practices or procedures at the unit, district or corporate level that relate to the process, duration, and location for retaining customer complaints and the investigations related thereto, as well as the person(s) responsible for such retention.

## III. **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court enter an Order compelling Defendant to immediately provide full substantive responses to Plaintiffs' Interrogatory Nos. 7, 8, 9, 10, 11, 14, 17, and 20, and to immediately produce all non-privileged documents responsive to Document Requests 11, 12, 13, 14, 22, 24, 26, 32, and 34.

Respectfully submitted,

Dated: May __, 2004.

_____

David C. Ates, GA Bar No. 026281
Alysa B. Freeman, GA Bar No. 275394
MILLER BILLIPS & ATES, P.C.
730 Peachtree St., Suite 750
Atlanta, Georgia 30308
Phone: 404/969-4101
Facsimile: 404/969-4141

Thomas J. Barton
Mary E. Kohart
Meghan Cherner-Ranft
*(admitted pro hac vice)*
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: 215/988-2700
Facsimile: 215/988-2757

Of Counsel:

Gerald S. Hartman
Christine D. Bell
Wendelyn L. Pizer
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, DC 20005-1209
Phone:  202/842-8800
Facsimile:  202/842-8465

- 50 -

Susan E. Huhta
Carolyn P. Weiss
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle NW, Suite 400
Washington DC 20036
Phone: 202/319-1000
Facsimile: 202/319-1010

Henderson Hill
FERGUSON, STEIN, CHAMBERS,
ADKINS, GRESHAM & SUMTER, P.A.
741 Kenilworth Avenue, Suite 300
Charlotte, North Carolina 28204-2828
Phone: 704/375-8461
Facsimile: 704/334-5654

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JAMES SOLOMON, DARA SOLOMON,　　　)
TERRY MILLER, HILARY MILLER,　　　　)
and  JESSICA MILLER, by her mother, and　)
next friend, HILARY MILLER　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　　)　Civil Action No.
　　　　　　　　　　　　　　　　　　)　1:03-CV-2797-ODE
　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
WAFFLE HOUSE, INC.,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　)

## CERTIFICATION OF COUNSEL

　　　Pursuant to Local Rule 37.1(A), I, Carolyn P. Weiss, certify that I have met

and conferred with Defendant Waffle House Inc.'s counsel pursuant to Fed. R.

Civ. P. 37(a)(2)(A)(B).


　　　　　　　　　　　　　　　　Carolyn Weiss/ for Permission
　　　　　　　　　　　　　　　　Carolyn P. Weiss

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JAMES SOLOMON, DARA SOLOMON, ) <br> TERRY MILLER, HILARY MILLER, ) <br> and  JESSICA MILLER, by her mother, and ) <br> next friend, HILARY MILLER ) <br> ) <br>      Plaintiffs, ) <br> ) <br>     v. ) <br> ) <br> WAFFLE HOUSE, INC., ) <br> ) <br>     Defendant. ) | Civil Action No. <br> 1:03-CV-2797-ODE |

## CERTIFICATE OF SERVICE

I hereby certify that on this 17 day of May 2004, I caused a copy of
the foregoing Plaintiffs' Motion to Compel and Memorandum in Support thereof to
be served via hand delivery, postage paid, to:

> David Gevertz
> Sandra Kim
> ASHE, RAFUSE & HILL, LLP
> 1355 Peachtree Street, N.E.
> Suite 500
> Atlanta, Georgia 30309-3232
> Phone: 404/253-6023
> Facsimile: 404/253-6060

> Alysa B. Freeman



# EXHIBIT / ATTACHMENT

### A

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES SOLOMON,                          :
DARA SOLOMON,                           :
TERRY MILLER, HILARY MILLER             :
and  JESSICA MILLER, by her mother      :
and next friend, HILARY MILLER          :
                                        :
          Plaintiffs,                   :       Civil Action No. 1:03-CV-2797
                                        :
     v.                                 :
                                        :
WAFFLE HOUSE, INC.                      :
                                        :
          Defendant.                    :
_____     :

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT WAFFLE HOUSE, INC.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure,

Plaintiffs James Solomon, Dara Solomon, Terry Miller, Hilary Miller, and Jessica

Miller ("Plaintiffs") hereby propound to Defendant Waffle House, Inc.

("Defendant" or "Waffle House") the following Interrogatories, to be answered in

writing, under oath, within the time provided by law.

7. The pronoun "you" refers to the party to whom these Interrogatories are addressed.

8. "Identify" or "state the identity of" means:

a) In the case of a person, to state the full name; home and business address and telephone numbers; employer or business affiliation; and occupation and business position held.

b) In the case of a company, to state the name; if incorporated, the place of incorporation; the principal place of business; and the identity of the person(s) having knowledge of the matter with respect to which the company is named.

c) In the case of a partnership, to state its principal address and the name and resident address of each general partner.

d) In the case of a document, to state the identity of the person(s) who prepared it; the sender and all recipients; the title or a description of the general nature of the subject matter; the date of preparation; the date and manner of distribution and publication; the location of each copy; the bates-number(s) (if applicable); the identity of the present custodian; and the identity of the person(s) who can identify it.

e) In the case of an act or event, to state a complete description of the act or event; when it occurred; where it occurred; the identity of the person(s) performing said act (or omission); the identity of all persons who have knowledge, information or belief about the act; when the act, event, or omission first became known; the circumstances; the manner in which such knowledge was first obtained; and the documents or other writings which memorialize the instance.

9. "Describe in detail" means to identify any document or communication concerning the item in question and to provide a complete, factual summary chronologically setting forth the substance of, and identifying any person participating in, witnessing, or having knowledge of, whether first hand or otherwise, any fact, action, occurrence, conduct, event, condition, or circumstance concerning the item in question.

10. The terms "Plaintiffs" refers to Plaintiffs James Solomon, Dara Solomon, Terry Miller, Hilary Miller, and Jessica Miller.

11. The terms "Defendant" or "Waffle House" refers to Waffle House, Inc., its predecessor(s) and assignees, as well as its divisions, parent and subsidiary entities, all related companies, and the officers, directors, employees, agents, representatives, and other personnel thereof.

12. Unless otherwise noted, the term "Waffle House restaurants," refers to all restaurants within the Waffle House system, including corporate-owned and franchised restaurants.

13. The term "race discrimination" or "racial discrimination" shall include racial bias, racial discrimination, racial harassment, and any other actions of any kind based on race.

14. The term "customer" shall include all persons seeking food and services from the entity signified in the Interrogatory, whether or not the persons seeking food and services were actually provided with food and services.

15. The term "manager" shall include all persons having managerial or supervisory authority over others, including district managers, assistant managers, supervisors and shift supervisors.

16. "Documents" as used herein shall mean every original and every non-identical copy of any original of all mechanically written, handwritten, typed or printed material, electronically stored data, microfilm, microfiche, sound recordings, films, photographs, videotapes, slides, and other physical objects or tangible things of every kind and description containing stored information, including but not limited to, transcripts, letters, correspondence, notes, memoranda, tapes, records, telegrams, electronic mail, facsimiles,

periodicals, pamphlets, brochures, circulars, advertisements, leaflets, reports, research studies, test data, working papers, drawings, maps, sketches, diagrams, blueprints, graphs, charts, diaries, logs, manuals, agreements, contracts, rough drafts, analyses, ledgers, inventories, financial information, books of account, understandings, minutes of meetings, minute books, resolutions, assignments, computer printouts, purchase orders, invoices, bills of lading, written memoranda or notes of oral communications, and any other tangible thing of whatever nature.

17. "Person" or "Persons" shall mean any individual, association, partnership, corporation, firm, organization, or entity.

18. Words of gender shall be construed as including all genders, without limitation.

19. Words in the singular shall be construed to mean the plural or vice versa as appropriate.

20. "And/or" shall mean "and" and "or".

21. "Including" shall mean "including but not limited to."

22. The terms "relate," or "relating to" shall mean mentioning, comprising, consisting, concerning, indicating, describing, referring, evidencing, regarding, pertaining to, showing, discussing, to be connected with, memori-

alizing or involving in any way whatsoever the subject matter of the request, including having a legal, factual or logical connection, relationship, correlation, or association with the subject matter of the request. A document may "relate to" an individual or entity without specifically mentioning or discussing that individual or entity by name.

23. The word "communication" or "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written and electronic expressions or other occurrences whereby thoughts, opinions, information or data are transmitted between two or more persons.

24. "Oral communication" shall mean any verbal conversation or other statement from one person to another, including but not limited to any interview, conference, meeting or telephone conversation.

25. If you object to any Interrogatory or Interrogatory subpart, or otherwise withhold responsive information because of the claim of privilege, work product, or other grounds:

    (a)    identify the Interrogatory question and subpart to which objection or claim of privilege is made;

- 7 -

(b)    state whether the information is found in a document, oral communication, or in some other form;

(c)    identify all grounds for objection or assertion of privilege, and set forth the factual basis for assertion of the objection or claim of privilege;

(d)    identify the information withheld by description of the topic or subject matter, the date of the communication, and the participants; and

(e)    identify all persons having knowledge of any facts relating to your claim of privilege.

26. If you object to any portion of an Interrogatory, explain your objection and answer the remainder.

27. If, in the course of answering any of the interrogatories, you encounter any ambiguity in construing either the inquiry or a definition or instruction relevant to the inquiry, explain what you find to be ambiguous and what construction you used in providing your answer.

28. The information requested herein is intended to include all knowledge and information of Defendant in its corporate capacity, and includes, unless otherwise specifically indicated, its predecessors, agents, legal representatives,

divisions, subsidiary entities, both controlled and wholly-owned, and all other related companies, and past and present officers, directors, employees, agents, representatives, attorneys and other personnel thereof.

29. Unless otherwise signified, the Complaint shall refer to the Complaint in the above-captioned lawsuit, in its most recently-amended form.

30. Unless otherwise signified, the Answer shall refer to the Answer in the above-captioned lawsuit, in its most recently-amended form.

31. Unless otherwise signified, "action" shall refer to the above-captioned lawsuit.

## INTERROGATORIES

1. Identify each person who assisted in the preparation of the responses to these interrogatories, and identify each Interrogatory that each such person answered or assisted in answering.

2. Identify each person having knowledge relating to this action, including but not limited to those persons who were witnesses through sight or hearing to any or all of the acts alleged in the pleadings, and describe in detail the knowledge of each person identified.  For each such person, indicate whether you intend to call him or her as a witness at trial.

- 9 -

3.  Identify each expert witness or lay opinion witness you intend to call to

testify at trial, and describe the opinions and bases therefore, including

expert qualifications and documents, and summaries or tests relied upon in

forming or expressing the opinion(s), and indicate whether any of these

persons has prepared any written statements in connection with the subject

matter of this litigation.

4.  Identify all employees, managers, district managers, agents or other

representatives of Waffle House, security personnel and customers or other

persons present in the Waffle House located at 12370 Arnold Mill Road,

Alpharetta, Georgia ("the Alpharetta Waffle House") on the day of

Plaintiffs' visit (April 21, 2002), including in your identification a

description of that person's duties, a description of any contact or

communications with Plaintiffs, and any documents reflecting such

information.

5.  Identify all employees, managers, district managers, agents or

representatives of Waffle House who were involved in any way in receiving,

processing or responding to the complaints lodged by Plaintiffs following

their April 21, 2002 visit to the Alpharetta Waffle House, including persons

who had contact with Plaintiffs (either oral or written), and persons who

were otherwise involved in the intake, processing, investigation, or resolution, if any, of Plaintiffs' complaints and describe the role that each person named had.

6. Describe in detail your response, if any, to the complaints lodged by Plaintiffs following their April 21, 2002 visit to the Alpharetta Waffle House, including a description of any investigation or inquiry conducted by you in response to Plaintiffs' complaints, and the results of any such investigation or inquiry.

7. Identify and describe in detail your policies, guidelines, training programs, procedures and practices with regard to customer service, including the seating of customers, the service of customers, the order in which customers are to be served, the "greeting" of customers when they enter the restaurant, the authority or discretion to deny service, and the discipline or counseling of employees in response to complaints from customers, and for each, indicate whether the policy, training program, guideline, procedure or practice is written or unwritten.  With regard to your training programs, if any, include in your description a detailed explanation of the contents of the training, the frequency of such training and by whom such training is received.

8. Identify and describe in detail your policies, guidelines, training programs, procedures and practices, if any, that relate to race discrimination against customers during the five years prior to the filing of this action, including your policies, guidelines, procedures and practices, if any, regarding the investigation, evaluation, processing or resolution of any complaints or claims of racial bias, discrimination or harassment. With regard to your training programs, if any, include in your description an explanation of the contents of the training, the frequency of such training and by whom such training is received.

9. For each employee, manager, agent or representative of Waffle House identified in response to interrogatory numbers 2, 4 and 5, indicate whether he or she received any of the training identified in response to Interrogatory numbers 7 and 8, including the dates of such training, the substance of such training, whether each employee successfully completed the training and the identity of any documents reflecting his or her attendance at such training or completion of such training.

10. Identify and describe in detail each and every alleged incident, report or complaint by customers regarding service at the Alpharetta Waffle House, including incidents, reports, or complaints regarding discrimination or

alleged discrimination on the basis of race, within the five years prior to the filing of this action.

11. Identify and describe in detail your response, investigation, or inquiry into, if any, each and every alleged incident, complaint, or report identified in your response to Interrogatory No. 10.

12. Describe in detail your demographic staffing policy, practice and procedures, including your Unit Information or "UIS" system and your policy or practice of maintaining an employment base in each restaurant that reflects the demographics of the community where the Waffle House is located and/or the demographics of the customer base of the Waffle House, and identify any and all documents reflecting these policies, practices and procedures.

13. Describe in detail your policies, practices and procedures related to the service of customers and the order in which customers are to be served, including, but not limited to your "First come, first served" policy, practice, or procedure, if any, and identify any documents reflecting this policy or procedure.

14. Describe in detail your documents or records retention policies, practices or procedures, if any, relating to customer complaints, including calls to your

toll-free telephone number, and identify any documents reflecting these policies, practices and procedures.

15. Identify and describe in detail your policies, procedures, and practices, if any, regarding enforcement of the policies, procedures and practices you identified in your responses to interrogatory numbers 7, 8, 12, 13, and 14, including disciplinary procedures.

16. Identify and describe in detail each and every communication (written or oral) amongst and between Waffle House officers, directors, employees, agents, representatives and other personnel with regard to this action, including any communications between Plaintiffs and Waffle House. Include in your description the identity of each person at Waffle House participating in such communications, a detailed description of the substance of each such communication and the date of each such communication.

17. Identify and describe in detail any and all prior complaints, formal or informal, by African American customers or employees, including complaints of discrimination, regarding Plaintiffs' server, Jerry Wall, and/or Waffle House employee Melvin Nichelson.

18. Identify and describe in detail any and all information regarding the counseling received by Jerry Wall and Melvin Nichelson, as described in

Paragraph 28 of your Answer, including the manner of the counseling, all

reasons for the counseling, and who performed the counseling.

19. Identify and describe in detail any and all information regarding Waffle

House's "coach[ing]" of its employees as described on page two of your

Answer.

20. Identify and describe in detail any and all information providing a factual

basis for your claims or defenses in this action, including each and every one

of the affirmative defenses raised in your Answer.

Dated: November 14, 2003.

Respectfully submitted,

David C. Ates, GA Bar No. 026281
Alysa B. Freeman, GA Bar No. 275394
MILLER BILLIPS & ATES, P.C.
730 Peachtree St., Suite 750
Atlanta, Georgia 30308
Phone: 404/969-4101
Facsimile: 404/969-4141

Of Counsel:

Gerald S. Hartman, DC Bar No. 168484
Wendelyn L. Pizer, DC Bar No. 479372
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, DC 20005-1209
Phone:  202/842-8800
Facsimile:  202/842-8465

Thomas J. Barton, PA Bar No. 50603
Erin P. Drew, PA Bar No. 89837
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: 215/988-2700
Facsimile: 215/988-2757

- 16 -

Henderson Hill, NC Bar No. 18563
Corie D. Pauling, NC Bar No. 24948
FERGUSON, STEIN, CHAMBERS,
ADKINS, GRESHAM & SUMTER, P.A.
741 Kenilworth Avenue, Suite 300
Charlotte, North Carolina 28204-2828
Phone: 704/375-8461
Facsimile: 704/334-5654

Susan E. Huhta
Carolyn P. Weiss
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle NW, Suite 400
Washington DC 20036
Phone: 202/319-1000
Facsimile: 202/319-1010

*Counsel for Plaintiffs*



# EXHIBIT / ATTACHMENT

## B

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES SOLOMON,                          :
DARA SOLOMON,                           :
TERRY MILLER, HILARY MILLER             :
and  JESSICA MILLER, by her mother      :
and next friend, HILARY MILLER          :
                                        :
                Plaintiffs,             :        Civil Action No. 1:03-CV-2797
                                        :
        v.                              :
                                        :
WAFFLE HOUSE, INC.                      :
                                        :
                Defendant.              :
                                        :

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF
## DOCUMENTS TO DEFENDANT WAFFLE HOUSE, INC.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure,

Plaintiffs James Solomon, Dara Solomon, Terry Miller, Hilary Miller, and Jessica

Miller ("Plaintiffs") hereby propound to Defendant Waffle House, Inc.

("Defendant" or "Waffle House") the following Request for Production of

Documents.  The requested documents are to be produced at the law offices of

Miller, Billips & Ates, P.C., 730 Peachtree Street, Suite 750, Atlanta, Georgia

30308, for inspection and copying within the time provided by law.  These

document requests are continuing in nature and Defendant is required to

reasonably supplement its responses, as provided by the Federal Rules of Civil Procedure.

## INSTRUCTIONS AND DEFINITIONS

The instructions and definitions of Plaintiffs' First Set of Interrogatories to Defendant Waffle House, Inc. ("Plaintiffs' First Set of Interrogatories") are incorporated by reference as though set forth fully herein, substituting the terms "document request" or "document requests" for the terms "Interrogatory" or "Interrogatories", as appropriate.

## DOCUMENT REQUESTS

1.  Any and all documents identified in your Answer, Initial Disclosures or in your responses to any requests for discovery propounded by Plaintiffs in this action.

2.  Any and all documents upon which you relied or reviewed in preparing your Answer, Initial Disclosures, or your responses to any requests for discovery in this action.

3.  Any and all documents that you intend to introduce as an exhibit in any hearing or trial in this action.

4. Any and all documents that you intend to use at trial for a purpose other than introduction as an exhibit, including visual aids, summaries, to assist in the examination of a witness, or any other similar use.

5. Any and all documents, including fee agreements, reports and correspondence provided to, received from or prepared by each person whom you intend to call as an expert witness in any trial in this action.

6. Any and all documents upon which you relied or reviewed in preparation for a deposition in this action.

7. Any and all documents relating to any and all communications between you and Plaintiffs and/or between you and Aaron and Sabrina VanderStappen.

8. Any and all documents relating to any and all communications amongst and between Waffle House officers, directors, employees, agents, representatives and other personnel regarding the incident involving Plaintiffs on April 21, 2002 at the Alpharetta Waffle House.

9. Any and all documents relating to the complaints made by Plaintiffs regarding their April 21, 2002 visit to the Alpharetta Waffle House, including any and all documents relating to investigations or inquiries conducted by you, if any, in response such complaints.

10. Any and all documents, including video recordings, audio recordings, logs and notes, relating to surveillance of the Alpharetta Waffle House on April 21, 2002.

11. Any and all documents contained in or relating to personnel files and/or records for each and every employee, manager, district manager, agent or representative of Defendant who was present in the Alpharetta Waffle House on April 21, 2002.  Include in your response documents relating to time sheets and other records relating to hours worked by these persons on April 21, 2002, training received, disciplinary records, identifying information, race, hire date, positions held, promotions and demotions, performance reviews, terminations and/or discrimination or customer complaints.

12. Any and all documents contained in or relating to personnel files and/or records for each and every employee, manager, district manager, agent or representative of Defendant who engaged in subsequent communications with Plaintiffs or who was involved in any investigation of, or response to, the Plaintiffs' complaint.  Include in your response documents relating to training received, disciplinary records, identifying information, race, hire date, positions held, promotions and demotions, performance review, terminations and/or discrimination or customer complaints.

13. Any and all documents relating to complaints by customers regarding service at the Alpharetta Waffle House, including complaints regarding discrimination or alleged discrimination on the basis of race within the five years prior to the filing of this action, including complaints, questionnaires, correspondence, civil complaints, charges, notice or communications received by you with regard to such incidents, and any and all records, logs, memoranda or notes relating to any such incidents.

14. Any and all documents relating to your response, investigation or inquiry, if any, into incidents or alleged incidents of discrimination on the basis of race against customers at the Alpharetta Waffle House, as well as complaints by customers regarding service at the Alpharetta Waffle House, within the five years prior to the filing of this action.

15. Any and all documents relating to your customer service policies, guidelines, training programs, procedures or practices at Waffle House restaurants for the five years prior to the filing of this action. Include in your response documents relating to the seating of customers, the service of customers, the order in which customers are to be served, including your "First come, first served" policy or practice, the "greeting" of customers when they enter the restaurant, the authority or discretion to deny service,

and employee discipline and/or counseling, including, as applicable, the "House Rules" and "national restaurant customer surveys" identified in your Answer.

16. Any and all documents describing or relating to your policies, guidelines, training programs, procedures or practices, if any, that relate to race discrimination against customers, during the five years prior to the filing of this action, including the "express nondiscrimination policy" and the policy against "racial mistreatment" identified in your Answer.

17. Any and all documents describing or relating to your policies, guidelines, training programs, procedures or practices, if any, for evaluating, handling or investigating customer complaints including but not limited to those of race discrimination, for the five years prior to the filing of this action, including documents relating to your procedures for handling complaints as identified on page four and five of your Answer, and documents relating to the criteria, methods, policies or procedures that you utilize or instruct your employees to utilize in evaluating, handling or investigating such complaints, however made, including but not limited to those communicated through your toll-free number.

18. Any and all documents discussing or relating to any training, guidance or instruction that you provided, or arranged for others to provide, to any of your managers, district managers, employees, agents and representatives, during the five years prior to the filing of this action, concerning non-discrimination and/or compliance with applicable non-discrimination or public accommodation laws, with regard to customers.

19. Any and all documents relating to your demographic staffing policy, practice and training procedures, including documents relating to your policy or practice of tracking the racial demographics of restaurant staff, documents relating to your Unit Information or "UIS" system, and documents relating to your policy or practice of maintaining an employment base in each restaurant that reflects the demographics of the community where the Waffle House is located and/or the demographics of the customer base of the Waffle House.

20. Any and all documents relating to the racial composition of Waffle House's staff, including any and all documents relating to or providing a factual basis for your statement that one-third of Waffle House's employees are minorities, as articulated by your spokesperson Pat Warner in numerous media reports.